## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA DIVISION

JOHN W. BEARD, JR. and SCENIC CITY  |
HOME and LAND, LLC,  |
 |
    Plaintiffs,  |     Case No. _____
vs.  |     COMPLAINT-CLASS ACTION
 |     DEMAND TRIAL BY JURY
MONSANTO COMPANY,  |
 |
    Defendant.  |

## COMPLAINT

The Plaintiffs, by and through their undersigned counsel, bring this action against Monsanto Company for violations of the Tennessee Consumer Protection Act of 1977, T.C.A. § 47-18-101, *et seq.*, and the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

## NATURE OF THE ACTION

1.     Monsanto is the manufacturer of the ubiquitous herbicide known as Round*up*. Among other Round*up* products, Monsanto manufactures, markets, and sells in the State of Tennessee Round*up* Weed & Grass Killer Concentrate Plus ("Round*up* Concentrate Plus") and Round*up* Weed & Grass Killer Super Concentrate ("Round*up* Super Concentrate") (Round*up* Concentrate Plus and Round*up* Super Concentrate will be referred to collectively as the "Round*up*

1

Concentrates".) Unlike "Ready-to-Use" Roundup, the Round*up* Concentrates are intended to be diluted with water prior to use.

2. Since late 2012 or early 2013, Monsanto has advertised the Round*up* Concentrates as being capable of making a certain number of gallons, and as being effective at addressing specific applications. For example, prominently at the top of the container in bold white numbers on a red background, the 32 fl. oz. size Round*up* Concentrate Plus advertises it makes 10 gallons of Round*up*, the 36.8 fl. oz. size advertises it makes 12 gallons of Round*up*, and the 64 fl. oz. size advertises it makes 21 gallons of Round*up*, as pictured below.



3. Those advertisements were false, however, because the Round*up* Concentrates were in fact only capable of making *half* the number of gallons

represented on the front of the bottle when diluted with water to the strength required for the uses advertised on the label of each product, such as around flower beds and trees, on driveways and walkways, and along fences. Thus, for example, the 32 fl. oz. size Round*up* Concentrate Plus makes only 5 ⅓ gallons of Round*up* for the advertised uses (despite advertising 10 gallons), the 36.8 fl. oz. size makes only 6 ⅛ gallons of Round*up* (despite advertising 12 gallons), and the 64 fl. oz. size makes only 10 ⅔ gallons of Round*up* (despite advertising 21 gallons). The same holds true for all sizes and variations of the Round*up* Concentrates - - each makes only between approximately 50% (for Round*up* Concentrate Plus) or 60% (for Round*up* Super Concentrate) of the amount promised.

4.     Plaintiffs bring this action to recover actual damages for themselves and other similarly-situated purchasers of the Round*up* Concentrates.

## JURISDICTION & VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and at least one member of the class of Plaintiffs is a citizen of a state different from Monsanto. The Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6.     The Court has personal jurisdiction over Monsanto as a result of

Monsanto's substantial, continuous and systematic contacts with Tennessee and because Monsanto has purposely availed itself of the benefits and privileges of conducting business activities within Tennessee.

7.      Venue is proper in the Eastern District of Tennessee pursuant to 28 U.S.C. § 1391(b) and (c), because Monsanto is subject to personal jurisdiction in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

8.      Plaintiff, John W. Beard, Jr., is a resident of Hamilton County, Tennessee.

9.      Plaintiff, Scenic City Home and Land, LLC is a Tennessee Limited Liability Company with its principal place of business located in Hamilton County, Tennessee. John W. Beard, Jr. is the sole member.

10.     Defendant Monsanto Company is a Delaware corporation and citizen with its principal place of business in St. Louis, Missouri.

## FACTS

11.     Monsanto is one of the world's largest agricultural companies, and has long been manufacturing and selling herbicides to control weeds. Monsanto's leading herbicide is called Round*up*, whose active ingredient is called glyphosate.

Monsanto first introduced Round*up* in the mid-1970s for the agricultural community, and then in the mid-1980s for residential use. Round*up* has been a dramatically successful product, and is one of the most widely-used herbicides in the world for residential use.

12.     Monsanto manufactures, markets, and sells Round*up* in various formulations, including Round*up* Ready-to-Use formulations, which are intended simply to be sprayed directly out of the bottle in which the product is purchased; and concentrated versions of the Round*up*, such as the Round*up* Concentrates, which the purchaser must first dilute with water before using with a tank sprayer.

13.     Specifically, Monsanto manufactures, markets and sells Round*up* Concentrate Plus in 16 fl. oz., 32 fl. oz., 36.8 fl. oz., 40 fl. oz., 64 fl oz., and 128 fl. oz. bottles (as partially pictured in the Nature of the Action, *supra*), and Round*up* Super Concentrate in 35.2 fl. oz., 53.7 fl. oz, 64 fl. oz, and 128 fl. oz. bottles, as partially pictured below.



14.    The  principal  display  panel  of  each  of  the  Round*up*  Concentrates prominently claims that that product "Makes Up to" a stated number of gallons, as follows.

| Product | Label Statement |
|---|---|
| Round*up* Concentrate Plus 16 oz. | "Makes Up to 5 Gallons" |
| Round*up* Concentrate Plus 32 oz. (1 qt.) | "Makes Up to 10 Gallons" |
| Round*up* Concentrate Plus 36.8 oz. | "Makes Up to 12 Gallons" |
| Round*up* Concentrate Plus 40 oz. | "Makes Up to 13 Gallons" |
| Round*up* Concentrate Plus 64 oz. | "Makes Up to 21 Gallons" |
| Round*up* Concentrate Plus 128 fl. oz. | "Makes Up to 42 Gallons" |
| Round*up* Super Concentrate 35.2 oz. | "Makes Up to 23 Gallons" |
| Round*up* Super Concentrate 53.7 oz. (0.42 gal.) | "Makes Up to 35 Gallons" |
| Round*up* Super Concentrate 64 oz. (1/2 gal.) | "Makes Up to 42 Gallons" |
| Round*up* Super Concentrate 128 oz. (1 gal.) | "Makes Up to 85 Gallons" |

15.    Directly under the Round*up* name, each Round*up* Concentrate label states "WEED & GRASS KILLER."  Further, directly under the Round*up* name and within  a  prominent  geometric  design  with  an  eye-catching  illustration,  each Round*up* Concentrate label also claims the product "**KILLS** THE ROOTS GUARANTEED."  A close-up of a Round*up* Super Concentrate label illustrating these elements is depicted below.

6



16.     Given the price of the Round*up* Concentrates in comparison to Ready-to-Use Round*up*, together with the purported number of gallons each Round*up* Concentrate makes, Monsanto markets the Round*up* Concentrates as better values than its Ready-to-Use products.

17.     A glossy several-page pamphlet is taped over the back label of each Round*up* Concentrate bottle, with its front page showing a graphic providing information under three headings, "Where to Use," "What to Know," and "How to Use."  Each one of the two backs of the bottles of the Round*up* Super Concentrate and Round*up* Concentrate Plus, respectively, with the taped pamphlet, is depicted below.

7

## Round*up* Concentrate Plus



Case 1:17-cv-00171-CLC-SKL     Document 1     Filed 06/19/17     Page 8 of 27     PageID #: 8

# Round*up* Super Concentrate



18.     Close-up exemplars of this graphic for Round*up* Concentrate Plus, and

Round*up* Super Concentrate, respectively, are depicted below.

## Round*up* Concentrate Plus



## Round*up* Super Concentrate



19.     As depicted above, the specific statements within each section of the graphic are as follows:

**<u>How to Use</u>**

"Add 6 fl oz Per Gallon of Water" [Round*up* Concentrate Plus]

"Add 2 1/2 fl oz Per Gallon of Water" [Round*up* Super Concentrate]

"Use a Tank Sprayer"

**<u>Where to Use</u>**

"Along Fences"

"Driveways & Walkways"

"Around Trees"

"Around Flower Beds"

**<u>What to Know</u>**

"Rainproof in 30 Minutes"

"Visible Results in 12 Hours" [Round*up* Concentrate Plus]

"Visible Results in 2 to 4 Days" [Round*up* Super Concentrate]

"Plant 1 to 3 Days After Application (See booklet for details)"

20.     Given the dilutions set forth on the back panel of each Round*up* Concentrate, the number of gallons that Monsanto represents the Round*up* Concentrates are capable of making for the advertised uses is approximately *double* what they are actually capable of making when mixed with water according

11

to Monsanto's own instructions.  Thus, the Round*up* Concentrates actually make about ***half*** the amount Monsanto claims, as demonstrated in the table below.

| Product | "Makes Up to" Gallon Promise | Back Label Instruction (Amount to Mix with 1 Gallon Water) | Amount Made Following Instructions |
|---|---|---|---|
| Concentrate Plus (16 oz.) | 5 gallons | 6 fl. oz. | 2.67 gallons |
| Concentrate Plus (32 oz.) | 10 gallons | 6 fl. oz. | 5.33 gallons |
| Concentrate Plus (36.8 oz.) | 12 gallons | 6 fl. oz. | 6.13 gallons |
| Concentrate Plus (40 oz.) | 13 gallons | 6 fl. oz. | 6.67 gallons |
| Concentrate Plus (64 oz.) | 21 gallons | 6 fl. oz. | 10.67 gallons |
| Concentrate Plus (128 oz.) | 42 gallons | 6 fl. oz. | 21.33 gallons |
| Super Concentrate (35.2 oz.) | 23 gallons | 2.5 fl. oz. | 14.08 gallons |
| Super Concentrate (53.7 oz.) | 35 gallons | 2.5 fl. oz. | 21.48 gallons |
| Super Concentrate (64 oz.) | 42 gallons | 2.5 fl. oz. | 25.6 gallons |
| Super Concentrate (128 oz.) | 85 gallons | 2.5 fl. oz. | 51.2 gallons |

21.    Sealed underneath the back-panel label page is a pamphlet that includes additional information and instructions for use.

22.    The pamphlet taped to the back label of the bottles is sealed tightly, and only with careful effort is the pamphlet able to be removed and opened without being torn.

23.    As a result, most reasonable consumers would not feel permitted to unseal the pamphlet prior to purchase.  Thus, purchasers do not rely on any of the information contained within the sealed pamphlet, and they would not even see that information, *prior* to purchasing the Round*up* Concentrates.

24.     Even for those who have already purchased the product and then succeeded in removing the pamphlet, generally they do not feel the need to review the instructions on several pages of fine print before actual use, particularly since they have already seen the easy-to-read diagram with mixing instructions on the cover of the pamphlet prior to purchase.

25.     And even for those who do read the remainder of the pamphlet after purchase, it is only through a careful review of this pamphlet, including noticing a buried "fine print" instruction, that the customer may see the inconsistent statement from Monsanto that accounts for the prominent misrepresentation that overstates the number of gallons made.

26.     As an example, two internal pages of the several-page pamphlet for the 64 fl. oz. Round*up* Super Concentrate are depicted below:

## DIRECTIONS FOR USE

It is a violation of Federal law to use this product in a manner inconsistent with its labeling.

## PRODUCT FACTS   KILLS ALL TYPES OF WEEDS & GRASSES

**Makes up to 42 Gallons**          **Treats up to 12,750 sq ft**

**HOW IT WORKS:** Roundup® Weed & Grass Killer Super Concentrate is absorbed by the weed's leaves. It moves through the weed to the root, stopping the production of an essential enzyme found in plants (but not in humans or animals). Weeds die, roots and all - so they don't grow back. Kills only what you spray. Any product not absorbed by plants breaks down without moving in or on the soil to untreated plants. Weeds usually yellow and wilt within 2 to 4 days with complete kill in 1 to 2 weeks.

**WHERE TO USE**
• On patios, walkways, driveways, gravel or mulch beds
• Around fruits, vegetables, flowers, shrubs or trees
• Along fences
• In large areas
        - For lawn replacement        - For garden plot preparation

## MIXING INSTRUCTIONS

**Tank Sprayer: Use of a Roundup® Brand Sprayer is recommended.** A plastic, fiberglass, plastic-lined steel or stainless steel sprayer may also be used.
• For best results, add 2-1/2 fl oz (5 Tbs) to 1 gallon of water.
• Spot treat or spray evenly over 300 sq ft.

For easy to kill weeds such as seedlings, add 1-1/2 fl oz (3 Tbs) to 1 gallon of water.

**Hose-End Sprayer:** For large areas, consider using the Ortho® Dial 'n Spray®
• Set dial to 2-1/2 oz.
• To sprayer jar add 2-1/2 fl oz (5 Tbs) for each 300 sq ft. **DO NOT** add water.
• Spray evenly over measured area.
• After spraying, unused product can be poured back into its original container.

1 Tablespoon (Tbs) = 3 teaspoons (tsp)          1 fl oz = 2 Tbs

Do not mix, store or apply with a galvanized or unlined steel (except stainless steel) sprayer, or through any irrigation system.

**HOW TO APPLY**
• Spray the weeds or grasses you want to kill until thoroughly wet.
• When spot treating weeds around desirable plants, shield plants from drift with a sheet of cardboard or plastic. If desirable plants are accidentally sprayed, rinse off immediately with water.

**IMPORTANT: Do not spray plants or grasses you like – they will die.** Not recommended for spot weed control in lawns since glyphosate kills lawn grasses.

**WHEN TO APPLY**
• Apply when weeds are actively growing.
• For best results, apply during warm, sunny weather (above 60° F) to accelerate systemic movement from foliage to roots.
• Apply when air is calm to prevent drift to desirable plants.
• RAINPROOF Protection: Rain or watering 30 minutes after application will NOT wash away effectiveness.
• If used to control weeds around fruit or nut trees, caneberries, or grapevines, allow 17 days before harvesting.

**WHEN TO REPLANT**
• All ornamental flowers, trees and shrubs may be planted **1 day after** application.
• Lawn grasses, herbs, vegetables (all), and fruits may be planted **3 days after** application.

**HOW TO CLEAN SPRAYER:** To clean sprayer after use, rinse sprayer and all sprayer parts with water 3 times. Spray rinse water on bare soil or gravel. After cleaning, sprayer may be used for other products.

## ADDITIONAL TIPS

**To Kill Vines**
• If vines are growing up poles, fences, or tree trunks with mature bark, cut vines to a height of 3 to 4 feet and spray vines thoroughly.
• If vines are climbing shrubs or tree trunks with green bark, cut vines at base and treat as directed for stumps or spray regrowth. If spraying regrowth, shield shrubs and tree trunks from spray drift with a sheet of cardboard or plastic.

**To Kill Bamboo**
• Cut canes close to the ground.
• Make cut just below a stem joint to create a hollow stem reservoir.
• Pour 1 Tbs of undiluted product into the hollow stem reservoir.
• Browning of the canes will occur in 7-14 days.
• Spray foliage if regrowth occurs.

**To Kill Stumps**
• Cut living stump close to ground.
• Drive 4 to 5 holes into freshly cut stump.
• Immediately pour undiluted product into holes.

**IMPORTANT:** Some trees may share the same root system. Adjacent trees having a similar age, height and spacing may signal a shared roots system. Injury may occur to non-treated trees when one or more trees sharing common roots are treated.

**For Lawn Replacement:** Use Roundup® Weed & Grass Killer Super Concentrate to kill a lawn and weeds before planting a new lawn.
• Skip one mowing before spraying.
• Use 2-1/2 fl oz (5 Tbs) per gallon of water for each 300 sq ft.
• If soil is dry, water before application and 2 to 3 days after application.
• If green patches remain after 7 days, reapply.
• Wait at least 3 days after last application to rake, till or replant with seed or sod.

2

27.     Notably, the pamphlet falsely restates, as the very first item under the heading, "PRODUCT FACTS - KILLS ALL TYPES OF WEEDS & GRASSES," that the product "Makes up to 42 Gallons."  The pamphlet further states, as the first bullet under "Mixing Instructions," that, "For best results, add 2-1/2 fl. oz. (5 Tbs) to 1 gallon of water."

28.     Only when a purchaser reads further down into "Mixing Instructions" is the very first and only reference to the possibility of using a greater dilution, wherein it states, "For easy to kill weeds such as seedlings, add 1-1/2 fl. oz. (3 Tbs) to 1 gallon of water."

29.     A reasonable purchaser - - for example, an ordinary homeowner interested in removing weeds along a fence, on a driveway, or around trees or flower beds - - would not open the sealed pamphlet prior to purchase and then upon purchasing the product and reading the entire pamphlet understand what constitutes an "easy to kill weed".

30.     To the contrary, a reasonable consumer would instead rely on Monsanto's representation that "for best results, add 2-1/2 fl. oz. (5 Tbs) to 1 gallon of water," especially inasmuch as this is consistent with the prominent graphic on the product's rear panel (which is also the cover to the pamphlet), set forth adjacent to the product's advertised intended uses.

31.     Reasonable consumers read and understand "up to" representations - - like the "Makes Up to" a specific number of "Gallons" representations on Round*up* Concentrates - - as providing, under normal and reasonable conditions for use, the maximum results promised. Indeed, the U.S. Federal Trade Commission has explicitly determined this to be the case, stating that its "view" is "that advertisers using these claims should be able to substantiate that consumers are likely to achieve the maximum results promised under normal circumstances."

32.     As demonstrated by the pamphlet itself, including its cover, use of the product only on "weeds such as seedlings" is not normal use.  Rather, normal use is as represented on the pamphlet's cover, and of course on the front of the bottle: as a "WEED AND GRASS KILLER," that "KILLS ALL TYPES OF WEEDS & GRASSES," and is to be used "Along Fences," on "Driveways & Walkways," "Around Trees," and "Around Flower Beds," wherein the use is "GUARANTEED" to "KILL THE ROOTS."

33.     Reasonable consumers should not be expected to notice, and then engage in the math necessary to determine that, following the dilution instructions provided on the back of the label of each Round*up* Concentrate, the product only makes half the amount stated prominently on the front.

34.     Moreover, even for the rare consumer that might engage in the math and notice the discrepancy, no explanation is provided except the single, small-print sentence buried in the pamphlet, and so the labeling remains confusing, and ambiguous as to whether, and under what circumstances, the product  "Makes

16

Up to" the amount stated, and at what point the efficacy of the product becomes less than what the consumer believes it to be, or not efficacious at all.

## PLAINTIFFS' PURCHASE

35.     Beginning in 2015, Plaintiffs purchased one or more bottles of the Round*up* Super Concentrate.

36.     Plaintiffs purchased the Round*up* Super Concentrate as opposed to the Ready-to-Use product.

37.     Plaintiffs purchased the Round*up* Super Concentrate for use at their home and in their business.

38.     Plaintiffs purchased various sizes of bottles of Round*up* Super Concentrate because of Monsanto's advertisements about the number of gallons that the concentrated product would make.

39.     Plaintiffs estimated that Round*up* Super Concentrate would yield a sufficient amount of finished product to make it more economical to use than the Ready-to-Use product to kill the weeds and grass at their home and in their business.

40.     Plaintiffs did not tear open the pamphlet on the back of the bottle before purchasing the product.  When Plaintiffs purchased the product, they believed the pamphlet contained the same information that was displayed on the

17

outside of the bottle. Before purchasing the product, Plaintiffs did not believe that it would be appropriate to tear open the pamphlet on the back of the bottle.

41. Plaintiffs purchased the Round*up* Super Concentrate because given the size of the area he needed to treat, it was expected that the Round*up* Super Concentrate would be a better value than the Ready-to-Use product and because he expected the finished product would yield the number of gallons as advertised.

42. Plaintiffs mixed the product with water according to the graphic on the back of the bottle and the instructions inside the pamphlet (i.e., 2 ½ fl. oz. of concentrate per gallon of water).

43. When purchasing Round*up* Super Concentrate, Plaintiffs were seeking a product that was effective at killing all unwanted weeds and grass, and which was more affordable than the Round*up* Ready-to-Use products. Plaintiffs understood that he was purchasing a concentrate with a substantially better dollar-per-gallon value than the Ready-to-Use alternative (*i.e.*, the value that would be had if the product supplied the maximum number of gallons). Moreover, Plaintiffs were seeking a product that would yield the advertised number of gallons of finished product that would kill all unwanted weeds and grass, including a product that "KILLS THE ROOTS" … "GUARANTEED".

44. Those representations, upon all of which Plaintiffs relied in purchasing the product, however, were false and misleading. That is because, as described in detail herein, the Round*up* Concentrates *do not* yield the volume, in

18

gallons, as promised if following the instructions for the advertised uses prominently stated on the product's back panel.

45.     By representing the *amount* of finished product Plaintiffs were supposedly buying, Monsanto implicitly also represented the product's value to Plaintiffs.  That representation, however, was false because, based on Monsanto's prominent mixing instructions, the Round*up* Super Concentrate was effectively under-filled, such that Plaintiffs received a different and substantially lesser value - - and, one with a higher cost - - than Monsanto represented. In effect, Plaintiffs received half the product they believed they purchased.  Accordingly, Plaintiffs did not realize the benefit of their bargain and their expectations were not met.

46.     In addition, Plaintiffs paid substantially more than the market value represented by the price they and Monsanto bargained for.  Like other class members, Plaintiffs bargained with Monsanto on a particular market value for a certain number of gallons of Round*up* made by diluting the Round*up* Super Concentrate. But because Monsanto only delivered a portion of those gallons, Plaintiffs paid a price-per-gallon that was significantly higher than reflected in the market price to which they and Monsanto agreed, and he received a number of gallons that was significantly less than what Monsanto promised. For those reasons, the Round*up* Super Concentrate Plaintiffs purchased was worth less than what they paid for it.

47.     Thus, through use of the misleading representation as to the amount

of product provided and thereby its value, Monsanto obtained enhanced negotiating leverage allowing it to command a price Plaintiffs and other class members would not have paid had they been fully informed. Specifically, Plaintiffs and other Class members would have paid approximately 50% less for Round*up* Concentrate Plus, and 40% less for Round*up* Super Concentrate, had they paid the agreed-upon market price for the number of gallons actually received.

48.     Absent the false and misleading labeling complained of herein, Plaintiffs and other Class members would only have been willing to pay less for the Round*up* Concentrates.

49.     Plaintiffs and other Class members lost money as a result of Monsanto's deceptive claims and practices in that they did not receive what they paid for when purchasing the Round*up* Concentrates.

50.     Plaintiffs and other Class members detrimentally altered their position and suffered actual damages in an amount of the under-filled portion of the Round*up* Concentrate purchases.

## CLASS ACTION ALLEGATIONS
**(as to Count II only)**

51.     While reserving the right to redefine or amend the class definition prior to seeking class certification, including seeking bifurcation of issues that are not amenable to resolution on a class wide basis pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to represent a Class of all persons who, on or after

March 2014 (the "Class Period"), purchased in the State of Tennessee, for personal or household use and not for resale or distribution, Roundup Weed & Grass Killer Concentrate Plus, or Roundup Weed & Grass Killer Super Concentrate, in packaging whose label stated that the product "makes up to" a specified number of gallons, specifically as follows:

| Product | Label Statement |
|---|---|
| Round*up* Concentrate Plus 16 oz. | "Makes Up to 5 Gallons" |
| Round*up* Concentrate Plus 32 oz. (1 qt.) | "Makes Up to 10 Gallons" |
| Round*up* Concentrate Plus 36.8 oz. | "Makes Up to 12 Gallons" |
| Round*up* Concentrate Plus 40 oz. | "Makes Up to 13 Gallons" |
| Round*up* Concentrate Plus 64 oz. | "Makes Up to 21 Gallons" |
| Round*up* Concentrate Plus 128 fl. oz. | "Makes Up to 42 Gallons" |
| Round*up* Super Concentrate 35.2 oz. | "Makes Up to 23 Gallons" |
| Round*up* Super Concentrate 53.7 oz. (0.42 gal.) | "Makes Up to 35 Gallons" |
| Round*up* Super Concentrate 64 oz. (1/2 gal.) | "Makes Up to 42 Gallons" |
| Round*up* Super Concentrate 128 oz. (1 gal.) | "Makes Up to 85 Gallons" |

52.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and the Court. The alleged class is believed to consist of many thousands of persons.

53.     Questions of law and fact common to Plaintiffs and the Class include:

a.     Whether Monsanto's use of the phrase "Makes up to" creates an implied warranty regarding what the Roundup Concentrates produce under normal conditions;

21

b.    The actual damages suffered as a result of Monsanto's failure to honor its warranty and remedy its violations of the Moss Magnuson Moss Warranty Act;

c.    The proper amount of restitution; and

d.    The proper amount of attorneys' fees.

54.    Those common questions of law and fact predominate over questions that affect only individual Class members.

55.    Plaintiffs' claims are typical of Class members' claims because they are based on the same underlying facts, events, and circumstances relating to Monsanto's conduct.    Specifically, all Class members, including Plaintiffs, received the same implied warranty when they purchased the Round*up* Concentrates, and suffered actual damages because Round*up* Concentrates do not conform with the implied warranty.    Absent Monsanto's business practice of breaching its implied warranty regarding the true quantity that Round*up* Concentrates make, Plaintiffs and other Class members would not have purchased the product on the same terms, and would not have lost a substantial portion of the expected bargain.

56.    Plaintiffs will fairly and adequately represent and protect the interests of the Class; they have no interest incompatible with the interests of the Class; and they have retained counsel competent and experienced in class action litigation.

22

57.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class member is small, such that, absent representative litigation, it would be infeasible for Class members to redress the wrongs done to them.

58.     As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3). In addition, it may be appropriate, pursuant to Fed. R. Civ. P. 23(c)(4), to maintain this action as a class action with respect to particular issues.

## CAUSE OF ACTION

### Count I
### Violation of the Tennessee Consumer Protection Act of 1977
### T.C.A. § 47-18-101, et seq.

59.     The Tennessee Consumer Protection Act of 1977, T.C.A. § 47-18-10 prohibits unfair or deceptive acts or practices such as using deceptive representations or representing that good have ingredients or quantities that they do not have.

60.     As detailed throughout Plaintiffs' Complaint, Defendant Monsanto, represented: that its Roundup Concentrate Plus 16 fl. oz. makes up to 5 gallons; that its Roundup Concentrate Plus 32 fl. oz. makes up to 10 gallons; that its Roundup Concentrate Plus 36.8 fl. oz. makes up to 12 gallons; that its Roundup Concentrate Plus 40 fl. oz. makes up to 13 gallons; that its Roundup Concentrate Plus 64 fl. oz. makes up to 21 gallons; and that its Roundup Concentrate Plus 128 fl. oz. makes up to 42 gallons.

61.     Defendant Monsanto also represented: that its Round*up* Super Concentrate 35.2 fl. oz. makes up to 23 gallons; that its Round*up* Super Concentrate 53.7 fl. oz. makes up to 35 gallons; that its Round*up* Super Concentrate 64 fl. oz. makes up to 42 gallons; and that its Round*up* Super Concentrate 128 fl. oz. makes up to 85 gallons.

62.     But, Defendant's representations about its Round*up* Concentrate Plus and Round*up* Super Concentrate were false and misleading. Round*up* Concentrate Plus and Round*up* Super Concentrate actually make up only about half the advertised number of gallons.

63.     The Round*up* Concentrates create a likelihood of deception and have the capacity to deceive, especially when read in conjunction with the mixing instructions on the back panel of the Round*up* Concentrate products.

64.     Defendant violated Tennessee Consumer Protection Act of 1977, T.C.A. § 47-18-104(b)(4) and (5) by misrepresenting the actual amount of finished product made using the instructions on the label with the intent that Plaintiffs rely on them and purchase its products.

65.     Plaintiffs were damaged by Monsanto's deceptive practices and their subsequent purchase of Round*up* Concentrate. Plaintiffs would not have purchased Round*up* Concentrate Plus and Round*up* Super Concentrate or paid the price they did, had the true facts been known.

**Count II**
**Violations of the Magnuson Moss Warranty Act,**
**15 U.S.C. § 2301, *et seq*.**

66.     The Roundup Concentrates are consumer products within the meaning of 15 U.S.C. § 2301(1).

67.     Plaintiffs and Class members are consumers within the meaning of 15 U.S.C. § 2301(3).

68.     Monsanto is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and 2301(5).

69.     The Magnuson-Moss Warranty Act permits a consumer to recover damages caused by the "failure of a supplier, warrantor, or service contractor to comply with any obligation under this [Act], or under a written warranty, implied warranty, or service contract."  15 U.S.C. §2310(d)(1).

70.     The Roundup Concentrates did not conform to the promises and affirmations made on the container or label of the goods, and as a result, Monsanto breached an implied warranty under Tennessee law.

71.     Specifically, the Roundup Concentrates do not "make up to" the advertised number of gallons under normal conditions.  Despite this, Monsanto so far has failed to refund Roundup Concentrate purchasers their money.

72.     By reason of Monsanto's breach of the implied warranty Monsanto has violated the statutory rights of the Plaintiffs and the class members pursuant to the Magnuson-Moss Warranty Act, thereby damaging Plaintiffs and the class members.  15 U.S.C. §2301, *et seq.*

73.     Monsanto was put on notice of its breach by the numerous claims of

breach of implied warranty and deceptive labeling practices made by consumers, but Monsanto has failed to remedy the violations.

74.     Plaintiffs and the class were injured as a direct and proximate result of Monsanto's breach because they would not have purchased the Roundup Concentrates on the same terms had they know the facts concerning the amount the product made, and lost a substantial portion of the bargain they expected.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendant, Monsanto Company, and the following remedies:

    a.    An Order requiring Monsanto to pay all actual, compensatory, and punitive damages (as allowed by law) permitted under the Tennessee Consumer Protection Act of 1977.

    b.    An Order compelling Monsanto to conduct a corrective advertising campaign;

    c.    An Order declaring the cause of action under Count II to be a proper class action, appointing Plaintiffs as class representative, and appointing his undersigned counsel as class counsel;

    d.    An Order requiring Monsanto to bear the cost of class notice;

e.   An Order requiring Monsanto to pay for damages pursuant to 15 U.S.C. §§ 2310(d)(1)-(2).

f.   Pre- and post-judgment interest (as allowed by law);

g.   An award of attorneys' fees and costs; and

h.   Such other and further relief for Plaintiffs and the Class as the Court deems appropriate and just.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Respectfully Submitted,

By: */s/ Michael A. Anderson*
     Michael A. Anderson, TN BPR #012368
     Patrick, Beard, Schulman & Jacoway, P.C.
     537 Market Street, Suite 202
     Chattanooga, TN 37402
     T: (423) 266-7327
     F: (423) 267-5032
     MAnderson@pbsjlaw.com

*Attorneys for Plaintiffs and all others similarly situated*